UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES E. WESSNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-03-S-3408-S |
| | ) |
| CROSSCREEK TELEVISION | ) |
| PRODUCTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the court on defendant's motion to set aside entry of default and to vacate the default judgment entered against it on March 21, 2005.[1]

### I.  PROCEDURAL BACKGROUND

The court entered default judgment due to defendant's repeated failure to comply with court orders and to otherwise perform its duties in defending plaintiff's claims. The events leading to the entry of default judgment can be chronicled as follows: Defendant failed to timely answer plaintiff's complaint, and the clerk

---

[1] Doc. no. 49. The default judgment is doc. no. 37. As an initial matter, the court notes that the clerk's entry of default already has been set aside. On June 9, 2004, after receiving defendant's answer to plaintiff's complaint (doc. no. 9), the court granted defendant's motion to set aside entry of default. Doc. no. 15. At that time, *default judgment* had not yet been entered against defendant. The March 21, 2005 default judgment was entered as a sanction for failure to engage in discovery, not as a result of defendant's failure to answer plaintiff's complaint. Thus, there is no clerk's entry of default currently on the record, and defendant's motion to set aside the entry of default will be denied as moot.

entered default against it on March 25, 2004.[2] Before a hearing was held on plaintiff's motion for default judgment, this court, on defendant's motion, set aside the clerk's entry of default[3] and reminded the parties of their respective obligations in prosecuting and defending the action.[4]

The Scheduling Order entered on July 12, 2004,[5] required the parties to commence all discovery in time for such to be completed by January 7, 2005. Defendant, however, ignored the court's orders and refused to engage in any meaningful discovery.[6] For example, defendant failed: to make available to plaintiff for inspection and copying the documents identified in its initial disclosures; to cooperate with plaintiff's counsel in scheduling depositions; and to respond to plaintiff's written discovery requests.

Due to defendant's failure to participate in discovery, plaintiff filed a motion to compel on December 1, 2004.[7] The court ordered defendant to respond to the

---

[2]Doc. no. 6.
[3]Doc. no. 15.
[4]Doc. no. 16.
[5]Doc. no. 21.

[6]Plaintiff states that defendant did submit its required Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on July 19, 2004. *See* doc. no. 29 (plaintiff's motion for sanctions), at 4-5. In those disclosures, defendant identified four witnesses and stated that "'relevant documents' were 'available for inspection and copying at the office of defendant's counsel upon reasonable notice.'" *Id.; see also id.* at Exhibit J. However, defendant never made the documents available to plaintiff's counsel for inspection, despite repeated attempts by plaintiff's counsel to arrange the inspection. *See id.* at 5.

[7]Doc. no. 27.

motion by December 16, 2004, but defendant filed nothing. When defendant still refused to participate in discovery, plaintiff filed a motion for sanctions, or in the alternative, for an extension of the discovery deadline, on December 30, 2004.[8] The court ordered defendant to show cause by January 12, 2005, why the motion for sanctions should not be granted,[9] and defendant once again failed to respond. Finally, on February 28, 2005, plaintiff filed a second motion for default judgment, requesting the court to enter default judgment as a sanction for defendant's repeated failures to engage in discovery.[10] In response to plaintiff's motion, on March 21, 2005, the court entered default judgment on the issue of defendant's liability and informed the parties that it would conduct a jury trial on the issue of plaintiff's damages.[11]

The court subsequently set the case for a pretrial conference on June 30, 2005, and directed the parties to submit a joint proposed pretrial order, setting forth, *inter alia,* their respective positions and arguments.[12] Plaintiff submitted a proposed pretrial order, but stated that defendant did not cooperate in drafting the order, and that defendant did not provide a statement of its position. Counsel for both plaintiff

---

[8]Doc. no. 29.

[9]Doc. no. 30.

[10]Doc. no. 34.

[11]*See* doc. no. 37. The issue of damages originally was to be tried by a jury because plaintiff made a jury demand in his complaint.

[12]*See* doc. no. 41 (notice of pretrial conference with attached instructions) and order entered on June 10, 2005 (resetting pretrial conference or June 30, 2005).

and defendant attended the pretrial conference.

Following the pretrial conference, plaintiff moved to withdraw his jury demand, stating that, due to the default judgment, there would be no evidence at trial which would require the hearing of a jury.[13] The court ordered defendant to respond to the motion, but it did not do so. On July 22, 2005, the court granted plaintiff's motion to withdraw his jury demand, stated that the issue of damages would be decided by the court on the basis of the parties' submissions, and directed plaintiff's counsel to serve a copy of the order upon a corporate representative of defendant.[14] On that same date, the court entered a Final Pretrial Order, setting forth deadlines for the parties to exchange proposed summaries of facts regarding damages, and to submit final statements of agreed facts and briefs to the court.[15] Once again, the court directed plaintiff's counsel to serve a copy of the order upon a corporate representative for defendant.[16]

On August 3, 2005, after plaintiff had submitted its prepared summary of facts to defendant, but before the deadline for submitting the joint statement of facts and briefs to the court, defendant, through new counsel, filed its motion to set aside

---

[13]Doc. no. 44.
[14]Doc. no. 47.
[15]Doc. no. 46.
[16]*See id.* at ¶ 10.

4

default and vacate the default judgment.[17]

In support of its motion, defendant states that its corporate representative "learned **for the first time** the negative procedural disposition of this case that has resulted from the filings of plaintiff and inaction of defendant's counsel" after receiving a copy of the court's July 22 pretrial order and order granting motion to withdraw jury demand.[18]  John E. Peers, a Vice-President of defendant, recounts the following with regard to the lack of progress in this case:

> Prior to filing suit in this case, the Plaintiff had filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  The company retained attorney John Falkenberry to handle this matter on our behalf.  Mr. Falkenberry responded to the EEOC, and the EEOC found no reasonable cause to believe that the Company had engaged in discrimination.
>
> We chose Mr. Falkenberry, on advice of our corporate counsel, because he was represented to us as an attorney experienced in this area of employment litigation and was fully capable of handling this matter.
>
> I know that the Company was served with a Complaint in this matter in March 2004.  Since Mr. Falkenberry was familiar with the matter from the EEOC stage and seemed to have handled that aspect of it competently, the Company retained him to represent us in the civil action Mr. Wessner filed.  Since that time we have cooperated with every document request that he has made of us and we have provided him with our defenses and with the names of witnesses who would testify that we did not discriminate against Mr. Wessner or otherwise violate his rights as claimed by the Complaint.

---

[17]Doc. no. 49.  The default judgment is doc. no. 37.

[18]Doc. no. 49, at ¶ 9 (emphasis in original).

Mr. Falkenberry assured us that he was familiar with the law in this area and that he was handling matters after the suit was filed. From time to time, I called to inquire of Mr. Falkenberry about the status of the suit. Sometimes I was unable to reach him. He did inform us that a default judgment had been entered but assured us that he had taken care of this matter and that the case was on track.[19]

Some time around May or early June of 2004, Mr. Falkenberry came to our offices in Alabaster to discuss the first default judgment and to bring us up to date. At that meeting, Mr. Falkenberry explained to Hugh Johnson, our Chief Financial Officer, and me, that the default was merely a clerical error. He then discussed with us the time line of the case and how it would proceed. We were provided by Mr. Falkenberry with an estimated budget for the litigation, which I had requested, so that we would know the approximate cost to the Company of him representing us on this matter.

We have done everything that we could to cooperate with Mr. Falkenberry in his representation of us. We stand ready to make company personnel available for depositions, or to produce documents and records that should have been produced by our counsel, whom we completely trusted in this case until the Company received on July 26, 2005, a certified mailing from the Court dated July 22, 2005.

On July 27, 2005, after determining that the Company's defense was not being competently handled and had, in fact, been mishandled, we telecopied and hand-delivered a letter terminating Mr. Falkenberry's representations of the Company.[20] We retained John Saxon and his firm as our counsel on July 29, 2005.

I then set about trying to do all that I could on behalf of the Company to address or amend the problems and failures that I now know the Court found with our defense of this case. We are ready,

---

[19]*See* footnote 1, *supra.*

[20]A copy of the letter terminating Mr. Falkenberry's services is attached to defendant's motion as Exhibit B.

willing and able to produce documents that should have been produced to Plaintiff's counsel, and we would like to be given the chance to take the actions that the Court believes necessary to determine the truth of the allegations if the Court will permit us to present out defenses.[21]

Based on these statements, defendant claims that "*due to the apparent neglect of his duties by prior counsel of record*, the corporate Defendant was wholly unaware that a second default judgment had been entered against it, that its meritorious claims and defenses had not been presented herein, and that a trial on damages had been ordered."[22]

## II. DISCUSSION

A motion to set aside a default judgment is governed by Rules 55(c) and 60(b) of the Federal Rule of Civil Procedure. Rule 55(c) provides that, "[f]or good cause shown, the court . . ., if a judgment by default has been entered, may . . . set it aside in accordance with Rule 60(b)." Rule 60(b) provides, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) *mistake, inadvertence, surprise, or excusable neglect* . . . ." Federal Rule of Civil Procedure 60(b) (emphasis supplied).

The decision whether to set aside a default judgment is within the district

---

[21]*Id.,* Exhibit A (Affidavit of John E. Peers), at ¶¶ 3-10.
[22]*Id.* at ¶ 10 (emphasis supplied).

court's sound discretion. *See Florida Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 783 (11th Cir. 1993) ("We reverse the district court's denial of a motion to set aside a default judgment only if the district court abused its discretion in denying the motion."). "[D]efaults are seen with disfavor because of the strong policy of determining cases on their merits." *Id.* (citations omitted). Nonetheless, a court should set aside a default judgment for mistake, inadvertence or excusable neglect only if the defaulting party can show: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Id.* (citing *Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir. 1990)).

**A.    Meritorious Defense**

To establish a meritorious defense, defendant "'must make an affirmative showing of a defense that is likely to be successful.'" *In re: Worldwide Web Systems, Inc.,* 328 F.3d 1291, 1296 (11th Cir. 2003) (quoting *Solaroll Shade and Shutter Corp. v. Bio-Energy Systems, Inc.,* 803 F.2d 1130, 1133 (11th Cir. 1986)). The defense may be supported by affidavits or other fact-based evidence, *see Lowery v. Hoffman,* 188 F.R.D. 651, 654-55 (M.D. Ala. 1999) (the defendant's meritorious defense was established by sworn affidavit), but general denials and other conclusory or

unsupported statements are insufficient. *See Solaroll*, 803 F.2d at 1133.

Defendant claims that the position statement submitted to the EEOC by John Falkenberry, its prior counsel, demonstrates its meritorious defenses against plaintiff's claims.[23] The position statement, which is six pages long, sets forth in detail the factual basis for the defense against plaintiff's age discrimination claim. However, as plaintiff points out, the position statement is not sworn testimony, and it is not accompanied by any evidentiary support. Further, the position statement addresses *only* plaintiff's age discrimination claim. It does not address plaintiff's claims under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") or the Employee Retirement Income Security Act of 1974 ("ERISA"), and there is no other evidence (or even any argument) in the record to support a defense to those claims.

**B.     Lack of Prejudice**

Defendant also argues that no prejudice will result to plaintiff if the default judgment is set aside. Plaintiff, on the other hand, asserts he already has been prejudiced by incurring substantial costs to attempt to engage defendant in litigation, and by the nearly two-year delay in these proceedings. The court regrets that plaintiff has been forced to put forth so much unfruitful effort in pursuing this case, and that

---

[23]*See* doc. no. 49, at Exhibit C (copy of position statement to EEOC).

his costs have increased as a result. Even so, costs and delay are not necessarily sufficient to establish prejudice.

> "Prejudice is not shown by the simple delay that will inherently attend in resolving a case from the setting aside of a judgment." 12 James Wm. Moore, *et al.*, Moore's Federal Practice § 60.22[2] (3d ed. 1999). Instead, prejudice is shown where evidence has been lost or destroyed, or will be more difficult to obtain, or where the plaintiffs' costs will increase to an unfair degree *as a result of setting aside a default. See id.*

*Lowery,* 188 F.R.D. at 655 (emphasis supplied). Here, although plaintiff "anticipates that evidence may be destroyed and will certainly be more difficult to obtain,"[24] plaintiff offers no support for his assertion, and there is no indication in the record that plaintiff is correct. Indeed, defendant states it is willing to engage in discovery pursuant to a highly abbreviated schedule in order to make up for its prior delay. Further, there is no indication that plaintiff's costs will unfairly increase *as a result of setting aside the default judgment.* It is true that plaintiff has incurred costs in pursuing the default judgment that it would not have incurred absent defendant's delay, but there is no indication that pursuing discovery and otherwise prosecuting this case will be substantially more expensive *from this point forward* than it would have been if defendant had cooperated from the beginning of the suit.

Plaintiff also asserts it will be prejudiced by being required to prosecute a suit

---

[24]Doc no. 52, at 13.

10

to which there is no meritorious defense. *See Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 1003 (N.D. Ga. 1983) (stating that "the expense a plaintiff incurs in prosecuting a suit in which the defendant has defaulted and presented no meritorious defense, unduly prejudices the plaintiff"). As discussed above, defendant has presented *no* defense to plaintiff's COBRA and ERISA claims, other than the general denial in its answer. On the other hand, although its defenses to plaintiff's age discrimination claim are not supported by affidavit testimony or other evidence, defendant has presented at least an *arguable* defense to that claim. Based on this fact, and on the lack of any indication that evidence will be lost, defendant has at least arguably satisfied the "meritorious defense" and "lack of prejudice" factors. Viewed in light of the general policy of disfavoring defaults, this showing might be enough to justify setting aside the default judgment, if those were the only relevant factors.

**C.    "Good Reason"**

Unfortunately for defendant, however, it must also establish a "good reason" for failing to engage in this litigation. *See Ehlers*, 8 F.3d at 783 (movant must establish a meritorious defense, a lack of prejudice to the non-moving party, *and* a good reason for failing to reply to the complaint); *In re Worldwide Web Systems, Inc.*, 328 F.3d at 1297 (stating that, while lack of prejudice is an important element, it is

11

not alone sufficient, because *all* elements must be satisfied).

Defendant asserts that its failures and delays in this case have been the result of Falkenberry's failure to do his job, and that defendant itself has not engaged in any misconduct or negligence. Accordingly, defendant states it "should not pay the price of its counsel's sins of omission or commission."[25] The repeated negligence of defendant's prior counsel is regrettable, but defendant itself is not without some culpability. As the Supreme Court has stated, litigants must "be held accountable for the acts and omissions of their chosen counsel. Consequently, . . . the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Pioneer Investment Company v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 397 (1993) (emphasis in original). The Eleventh Circuit has stated that "an attorney's negligent failure to respond to a motion does not constitute excusable neglect . . . ." *Solarall,* 803 F.2d at 1132. The court recognized that its rule "appears to penalize innocent clients for the forgetfulness of their attorneys." *Id.* Despite this result, however, "a court possesses the inherent authority to enter a default judgment in response to an attorney's dilatory tactics." *Id.*

Thus, it is clear that a litigant *can be* held responsible for its attorney's negligence, especially when the litigant had ample opportunity to discover the

---

[25]Doc. no. 49, at 7.

negligence and act to remedy it. This principle is illustrated by the Eleventh Circuit's decision in *Ehlers.* There, the district court entered default judgment when, after several years of litigation, Ehlers (the defendant) had failed to: answer the plaintiff's amended complaint, engage in discovery, comply with court orders, file pretrial submissions, attend the pretrial conference, and respond to the plaintiff's affidavit on damages. *Ehlers,* 8 F.3d at 782-83. Ehlers, through new counsel, moved to set aside the default judgment nearly one year later, stating that neither he nor his attorney received notice of the judgment, due to his recent move and his attorney's suspension from the Florida state bar. *Id.* at 783. Ehlers stated that he attempted to contact his attorney on several occasions, but "he 'was frequently difficult to reach.'" *Id.*

The district court denied Ehlers' motion, and the Eleventh Circuit affirmed, holding that Ehlers had failed to demonstrate a good reason for failing to answer the complaint or otherwise engage in the litigation. The lawsuit was filed in 1986, and Ehlers was aware of the suit as early as 1987, because by that time, he had hired an attorney to represent him. *Id.* at 784. Even so, neither Ehlers nor his representative took any action until 1991, when Ehlers filed the motion to set aside default judgment. The court stated:

> Ehlers's actions demonstrate a lack of diligence in defending the suit. Despite a significant lull in the proceedings between 1987 and 1989, Ehlers was informed in August 1989 that [the plaintiff] was

13

> preparing to prosecute its claim against him. Ehlers was unable, however, to contact [his attorney] following the August 1989 notice. Ehlers's inability to contact [his attorney] should have alerted him to potential problems in his representation . . . . Ehlers, however, appears to have done nothing to ensure that his interests were being sufficiently represented. Such inaction demonstrates a lack of diligence on Ehlers's part, especially when [the plaintiff] alleged millions of dollars of damages in its complaint.

*Id.* Because "[t]he 'failure to establish minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect," the Eleventh Circuit held that Ehlers had failed to establish a "good reason" for his past failures. *Ehlers,* 8 F.3d at 785 (citing *Gibbs v. Air Canada,* 810 F.2d 1529, 1537 (11th Cir. 1987)).

A similar situation is presented in the present case. Here, defendant did answer plaintiff's complaint, but it subsequently failed to engage in any meaningful discovery, respond to court orders, or otherwise participate in the litigation process. Defendant's counsel attended the pretrial conference, but did not participate in drafting the proposed pretrial order. Defendant attributes these failures entirely to the negligence of its former counsel, John Falkenberry. Upon review of the parties' submissions, however, the court concludes defendant also must bear some responsibility. John E. Peers, defendant's Vice-President, states he was aware the company was served with a complaint in March of 2004. He also was aware as early

14

as May or June of 2004 that default had been entered against the company while the company was being represented by Mr. Falkenberry. Despite the default, the company continued to employ Falkenberry and discussed with him a time line for the remainder of the litigation. Peers inquired about the status of the case "from time to time," but sometimes was unable to reach Falkenberry. According to Peers, the company "completely trusted" Falkenberry to represent it.

The company learned of the March 21, 2005 default judgment months after it had been entered, and it acted promptly to terminate Falkenberry's representation, hire new counsel, and attempt to have the judgment set aside. Defendant states it now is "ready, willing and able" to proceed with litigation on an expedited basis. However, defendant's new-found diligence is simply too little, too late. Defendant knew that, under Falkenberry's representation, a default had been entered against it. Even so, they continued to trust Falkenberry and did not closely monitor the progress of the case. Because of this, *more than a year* passed between the date of first entry of default and the date of defendant's motion to set aside default judgment. Falkenberry's past negligence, coupled with Peers' inability to contact Falkenberry, should have alerted defendant to potential problems with Falkenberry's representation. If defendant had exercised even minimal diligence, it could have discovered Falkenberry's negligence long before now and acted more promptly to

either prevent default judgment from being entered, or to have the judgment set aside. Because of defendant's "failure to establish minimum procedural safeguards" to ensure that Falkenberry was doing his job, the court finds no good reason exists for defendant's failures to follow court orders and engage in litigation. *See also Griffin v. Swim-Tech Corp.,* 722 F.2d 677, 680 (11th Cir. 1984) (upholding the denial of Rule 60(b) relief when the record was "replete with inexcusable delay and numerous unjustified violations of the court's orders").

### III. CONCLUSION

Defendant has failed to satisfy all requirements for setting aside a default judgment under Eleventh Circuit precedent. Accordingly, its motion to set aside the default judgment will be denied. An appropriate order will be entered contemporaneously herewith.

DONE this 6th day of September, 2005.

_____
United States District Judge